UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH ANDERSON, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STARBUCKS CORPORATION,<br><br>Defendant. | Case No. 3:20-cv-01178-JD<br><br>**ORDER RE REMAND**<br><br>Re: Dkt. No. 13 |

Named plaintiffs Anderson and several others have sued Starbucks Corporation on behalf of a putative class of store managers to recover cell phone costs and fees incurred on the job. Plaintiffs filed this action under California state law in the Alameda County Superior Court. Dkt. No. 1-2. Starbucks removed to federal court under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d). Dkt. No. 1. Plaintiffs say that Starbucks has not plausibly established the $5 million amount in controversy required for CAFA jurisdiction, and that the case should be remanded. Dkt. No. 13. The motion is denied.

## BACKGROUND

As alleged in the complaint, plaintiffs were store managers at Starbucks locations throughout California. Dkt. No. 1-3 ¶ 3.[1] Starbucks "expected and required" managers to be available to handle work issues as they arose, "[r]egardless of whether they were working or not." *Id*. As a result, plaintiffs "regularly used their personal cellular telephone and data/text plans" for work-related emails, texts, phone calls, and other applications. *Id*. Plaintiffs say that Starbucks

---

[1] Dkt. No. 1-3 is an amended complaint filed in state court before removal. Starbucks attached the original and amended complaints to the removal notice. They are identical in all salient respects, and the amended complaint is cited here for clarity and convenience.

1

expected store managers to pay for their phones and service plans, and did not reimburse them for these expenses incurred on the job.  *Id*. ¶¶ 3, 23.

In the initial complaint, plaintiffs alleged claims under California Labor Code Section 2802 for recovery of their expenses, and under the Unfair Competition Law, Business & Professions Code Section 17200, for restitution.  Dkt. No. 1-2.  In an amended complaint, plaintiffs added two new named plaintiffs and a claim under the Private Attorneys General Act, California Labor Code Section 2699, for civil penalties.  Dkt. No. 1-3.

The putative class is defined as "all persons who are or have been employed at any time during the Class Period by Starbucks in California under the job title Store Manager."  *Id*. ¶ 27.  Plaintiffs did not quantify in either complaint the damages or monetary losses they attribute to Starbucks' practices.  Both complaints are silent on the dollar value of the claims.

Starbucks filed a notice of removal under CAFA on February 14, 2020, which was approximately eight months after the original complaint was filed in state court.  Dkt. No. 1 at 1.  Starbucks said that interrogatory answers by two of the named plaintiffs served on February 5, 2020, revealed that they had paid $50 and $80 per month respectively during the class period for their cellular plans.  *Id*. at 2-3; Dkt. No. 1-6.  This was when Starbucks "first ascertained" that the claims plausibly crossed the $5 million CAFA threshold.  Dkt. No. 1 at 3; *see* 28 U.S.C. § 1446(b).

In the removal petition, Starbucks estimated that the amount in controversy "is at least $5,905,100."  *Id*. at 6.  It calculated this amount by taking the low-end interrogatory answer of $50 per month in plan fees and multiplying it by the number of months worked by store managers during the class period, which it determined to be 118,102 months based on its business records.  *Id*. at 9.  Starbucks suggested that an additional $1,476,275 in attorneys' fees and costs should be factored in toward the CAFA threshold based on California state cases with similar claims that awarded approximately 25% of the class's recovery to plaintiffs' counsel.  *Id*. at 9-10.  In sum, Starbucks alleged that "at least $7,381,375" is in play in this lawsuit.  *Id*. at 10.

In response to plaintiffs' objection in the remand motion that these numbers spotted them too much, Starbucks offered an alternative estimate based on a reduced cell phone bill of $32.50

1  per manager, and a $50 reimbursement for the cost of each manager's phone, which was not
2  included in the removal notice. Dkt. No. 16 at 15-16. The $32.50 was derived by taking the
3  average of the $50 and $80 monthly bills in the interrogatory answers, which is $65, and reducing
4  it by 50%. *Id*. It applied the same estimated fee award of 25% to yield $1,011,678.75 in fees. *Id.*
5  The alternative amount in controversy was estimated to be $5,058,393.75. *Id.*

6  Plaintiffs' main argument for a remand is that Starbucks' estimates of the amount in
7  controversy are irrationally generous. Plaintiffs had an opportunity to present evidence for the
8  Court to consider, but did not proffer anything with respect to the number of store managers or
9  work months, the cost of the cell phone plans or devices, or other pertinent facts. Plaintiffs rely
10 solely on criticisms of Starbucks' evidence.

**DISCUSSION**

Plaintiffs are quite right to say, as they repeatedly do, that a strong presumption against removal applies in the typical diversity case. *See California v. AbbVie, Inc.,* 390 F. Supp. 3d 1176, 1180 (N.D. Cal. 2019). But when a case is removed under CAFA, "no antiremoval presumption" applies. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) ("Congress intended CAFA to be interpreted expansively" in favor of removal of certain class actions) (internal citation omitted). A defendant's notice of removal "need include only 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,'" and does not need evidentiary submissions. *Sharpe v. Puritan's Pride, Inc.*, Case No. 16-cv-06717-JD, 2017 WL 475662 at *2 (N.D. Cal. Feb. 6, 2017) (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (internal citation omitted)).

When the amount in controversy estimated in the removal notice is challenged in a remand motion, the defendant's responsive burden depends on whether the plaintiff's attack is facial or factual. *Salter v. Quality Carriers, Inc.,* 974 F.3d 959, 964 (9th Cir. 2020). An attack is facial when the plaintiff accepts the defendant's allegations but says they are not enough to invoke federal jurisdiction. *Id*. In effect, a facial attack challenges "the form, not the substance" of the defendant's removal allegations, and the defendant need not respond to the remand motion with

3

"competent proof" under a summary judgement-type standard. *Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020).

An attack is factual when the plaintiff "contests the truth of the [defendant's] factual allegations, usually by introducing evidence outside the pleadings." *Salter*, 974 F.3d at 964. To counter a factual attack, the defendant bears the burden of establishing by a preponderance of the evidence that the amount in controversy exceeds $5 million. *Harris*, 980 F.3d at 699. The plaintiff may also submit evidence, but is not required to proffer "an alternative [assumption] grounded in real evidence." *Id*. at 700 (quoting *Ibarra*, 775 F.3d at 1199) (bracket in original); *see also Chin v. Cole Haan, LLC*, Case No. 16-cv-02154-JD, 2016 WL 7211841, at *1 (N.D. Cal. Dec. 13, 2016). The plaintiff may rely instead on "a reasoned argument as to why any assumptions on which [defendant's numbers] are based are not supported by evidence." *Harris*, 980 F.3d at 700.

That is what plaintiffs have done here. They make a factual attack on Starbucks' estimates of the amount in controversy by contesting its evidence and reasoning, and without introducing extrinsic evidence of their own.

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "To meet CAFA's amount-in-controversy requirement, a defendant needs to plausibly show that it is reasonably possible that the potential liability exceeds $5 million." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020). The defendant carries its burden of establishing the amount in controversy by presenting evidence that "plausibly" explains "how the stakes exceed $5 million." *Lewis*, 627 F.3d at 400-01. The defendant "need not make the plaintiff's case for it," or prove the amount in controversy to a certainty. *Harris*, 980 F.3d at 701; *see also Lewis*, 627 F.3d at 401. The Court also need not perform detailed mathematical calculations to determine whether the defendant has established the jurisdictional amount. *Harris*, 980 F.3d at 701. Rather, "a defendant may rely on reasonable assumptions to prove that it has met the statutory threshold," *id.*, and on a "chain of reasoning that includes assumptions" based on reasonable grounds, *Ibarra*, 775 F.3d at 1199. Reasonable grounds include the allegations in the

4

complaint, as well as extrinsic evidence proffered by the defendant. *Arias*, 936 F.3d at 925. "[P]rospective attorneys' fees must be included in the assessment of the amount in controversy." *Id*. at 922.

Starbucks has demonstrated that removal was proper. To start, it filed the removal notice well "within thirty days of ascertaining that the action is removable under CAFA." *Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1180 (9th Cir. 2015). Plaintiffs make no showing to the contrary.

For the main issue in dispute, there is no doubt that Starbucks has plausibly established that it is reasonably possible that the amount in controversy exceeds $5 million. Starbucks' statements about the number of prospective class members, and their collective work months, are grounded in its business records. Starbucks filed a declaration by a Partner Resources Vice President, which is a human resources position at the company, stating that "there are at least 4,168 individuals who held the Store Manager position in California," and verifying that the managers collectively worked "approximately 118,102 months" during the class period. Dkt. No. 16-1 at ¶¶ 1-3. Plaintiffs offer no good reason to call this evidence into question, and there is nothing on the record to indicate that these numbers are in any way unreliable. Plaintiffs suggest that Starbucks "picked a number from thin air" for the headcount of managers, Dkt. No. 17 at 4, but what that means in light of the Vice President's declaration based on business records is unclear.

So too for Starbucks' treatment of the monthly cell plan costs. Plaintiffs say the proposed $50 and $32.50 figures are the ugly fruits of "cherry-picking" because they are based on interrogatory answers of just two of several named plaintiffs. Dkt. No. 13 at 6. A better way of saying it is that Starbucks used all of the responses by plaintiffs who actually answered the interrogatory directly, which only two plaintiffs did. Starbucks took both answers fully into account. *See* Dkt. Nos. 16 at 15; 16-3 at 3. If anything, Starbucks did the opposite of cherry-picking, and took the additional measure of positing monthly cell fees at or below the low-end interrogatory answer. Plaintiffs did not contest these numbers with evidence of lower monthly fees, and have not shown that Starbucks' plan fee numbers were unreasonable.

Plaintiffs' criticism that Starbucks assumed too full a measure of liability and recovery is also unavailing. Plaintiffs say that it was unreasonable to assume that class members would recover 100% of their cell phone fees, and that "class members would only be entitled to a reasonable percentage of their expenses incurred," but not all of their cell plan bills as Starbucks assumed in the notice of removal. Dkt. No. 13 at 2; *see also* 6-7. Plaintiffs also suggest that the word "regularly" in the amended complaint does not mean that every store manager incurred unreimbursed phone expenses every work month. *Id*. at 8.

To be sure, "regularly" does "not necessarily mean *always* doing something." *Ibarra*, 775 F.3d at 1198-99 (emphasis in original). But the allegations in the amended complaint and plaintiffs' discovery responses demonstrate that "always" best approximates plaintiffs' theory of the case. The allegations are made on behalf of "all" store managers who were "expected and required" to "place and/or receive" a variety of job-related phone calls and text messages "[r]egardless of whether they were working or not." Dkt. No. 1-3 ¶¶ 1, 3; *see also* ¶ 31. Starbucks is said to have "maintained" a policy of denying all reimbursement of cell plan costs for several years. *Id*. ¶ 23. As Starbucks notes, plaintiffs doubled-down on these allegations in their interrogatory responses by stating that Starbucks expected them to be available by phone "at any time, wherever I was located," and "when I was off duty or otherwise not physically in the store." Dkt. No. 16 at 12, 14. Plaintiffs say they were called or texted regularly about store operations. *Id*. at 12-14. Failing to be available "at all times" by phone "could have a detrimental effect on the store and could result in me being subject to disciplinary action." *Id*. at 14-15.

Overall, plaintiffs maintain that the "circumstances and conditions of my employment necessitated use of my personal mobile device for work related purposes on a regular basis." *Id.* at 14. In light of these and other broad factual allegations, Starbucks was reasonable in positing the possibility that each putative class member could recover unreimbursed expenses for every month worked. The gravamen of the case is that it was mandatory for all store managers to be reachable by phone or text every day they held the job, which would make a monthly cell phone plan a required work-related expense. Plaintiffs do not seriously dispute this, and nothing in the record indicates that store managers incurred phone charges in only some but not all months of their

6

employment. Plaintiffs seek refuge in decisions in *Harris* and other wage-and-hour disputes, but these cases are distinguishable because they involved more open-ended practices than plaintiffs allege here.

For the question of less than a full recovery of the monthly plan fee, Starbucks accounted for this possibility by using a low-end monthly fee of $50 in the notice of removal, which was substantially below the high-end answer of $80 and the average of the two ($65). Dkt. No. 1 at 9. It further reduced that figure to $32.50 in the alternative estimate. *See* Dkt. No. 16 at 16. These figures are a reasonable basis for estimating an amount on controversy on less than a 100% recovery of all expenses.

Starbucks included a $50 device reimbursement cost in the alternative estimate, which was also reasonable in light of plaintiffs' request to include "the cost of personal cell phones and the concomitant data/text plans" as items of monetary recovery. Dkt. No. 1-3 ¶ 28(b)(i). Plaintiffs do not meaningfully argue otherwise, and have not shown that a $50 device reimbursement figure is unreasonable.

Plaintiffs' objection to the inclusion of attorneys' fees is not well taken. "[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias*, 936 F.3d at 922 (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018)). Plaintiffs brought this action under California Labor Code Section 2802, which states that the "necessary expenditures or losses" an employer is liable for includes "attorney's fees incurred by the employee enforcing the rights granted by this section." Cal. Lab. Code § 2802(c). "A defendant does 'not need to prove to a legal certainty' that a plaintiff will be awarded the proffered attorneys' fees in the removal notice." *Greene*, 965 F.3d at 774 n. 4 (9th Cir. 2020) (citing *Dart Cherokee*, 574 U.S. at 88). The estimated attorneys' fees must simply be reasonable. *Id.*

There is no per se rule that a 25% award for attorneys' fees is reasonable *vel non*; the context of each individual case must be assessed. *Arias*, 936 F.3d at 928. Courts in our circuit have treated a potential 25% fee award as reasonable in similar cases. *See, e.g., Lucas v. Kors*, Case No. CV 18-1608-MWF, 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018) (and cases cited

7

therein).  This is enough to establish the reasonableness of the attorneys' fees estimate Starbucks used here.  *See Greene*, 965 F.3d at 772.

## CONCLUSION

Starbucks has plausibly established a possibility that the amount in controversy exceeds $5 million.  Consequently, the case was properly removed and a remand is denied.

**IT IS SO ORDERED.**

Dated: December 31, 2020

JAMES DONATO
United States District Judge