**WYNNE LAW FIRM**
EDWARD J. WYNNE (SBN 165819)
ewynne@wynnelawfirm.com
GEORGE R. NEMIROFF (SBN 262058)
gnemiroff@wynnelawfirm.com
80 E. Sir Francis Drake Blvd., Suite 3G
Wood Island Larkspur, CA 94939
Telephone:  (415) 461-6400
Facsimile:   (415) 461-3900

**SHAVITZ LAW GROUP, P.A.**
GREGG I. SHAVITZ (admitted *pro hac vice*)
gshavitz@shavitzlaw.com
CAMAR JONES (admitted *pro hac vice*)
cjones@shavitzlaw.com
ALAN L. QUILES (admitted *pro hac vice*)
aquiles@shavitzlaw.com
951 Yamato Road, Ste. 285
Boca Raton, FL 33431
Telephone:  (561) 447-8888
Facsimile:   (561) 447-8831

Attorneys for Plaintiffs and the Putative Class

(*Additional Counsel Listed on Following Page*)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUKE ADELMAN, ELIZABETH ANDERSON, ELLESSE ANDERSON, JEFFREY BELLOWS, KATHERINE BUTLER, CHEYENNE CHITRY, CHRISTINA DENTON, JACQUELINE FOSTER, JAMES HANCOCK, DONNIE HYSO, CASEY MCKAY, HANNAH ROTHSCHILD, CASSANDRA SWEENEY and MICHAEL WHITER, individually and on behalf of all others similarly situated<br><br>                        Plaintiffs,<br>    v.<br><br>STARBUCKS CORPORATION,<br><br>                        Defendant. | Case No. 3:20-cv-01178-JD<br><br>[Assigned To Hon. James Donato]<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><br><br><br>Date: July 25, 2024<br>Time: 10:00AM<br>Location: Ctrm. 11, 19th Floor<br>Hon. James Donato |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COHELAN KHOURY & SINGER**
MICHAEL D. SINGER (SBN 115301)
msinger@ckslaw.com
MARTA MANUS (SBN 260132)
mmanus@ckslaw.com
605 C Street, Suite 200
San Diego, CA 92101
Telephone: (619) 595-3001
Facsimile: (619) 595-3000

**DAVTYAN LAW FIRM, INC.**
EMIL DAVTYAN (SBN 299363)
support@davtyanlaw.com
880 E. Broadway
Glendale, CA 91205
Telephone: (818) 875-2008
Facsimile: (818) 722-3974
Attorneys for Plaintiffs and the Putative Class

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on July 25, 2024 at 10:00 AM, or as soon thereafter as counsel may be heard, in the courtroom of the Hon. James Donato, United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California, in Courtroom 11, 19th Floor, Plaintiffs Luke Adelman, Elizabeth Anderson, Ellesse Anderson, Jeffrey Bellows, Katherine Butler, Cheyenne Chitry, Christina Denton, Jacqueline Foster, James Hancock, Donnie Hyso, Casey McKay, Hannah Rothschild, Cassandra Sweeney and Michael Whiter, will and hereby do respectfully move the Court for final approval of the proposed class action and representative action settlement.

Plaintiffs respectfully request that the Court: (1) grant final approval for the proposed class action and representative action settlement; (2) grant final certification of the proposed settlement class; and (3) enter judgment.

Plaintiffs make this Motion on the grounds that the settlement is fair and within the range of similar class action settlement which have received final approval. This Motion is based upon this Notice of Motion and Motion for Final Approval of Class Action Settlement, the Memorandum of Points and Authorities in Support Thereof, the Motion for Approval of Attorneys' Fees and Costs and supporting documents (Dkt. No. 141), the accompanying Declaration of Edward J. Wynne, the Declaration of Settlement Administrator Markus Bulthuis from Simpluris, Inc., the Class Action Settlement and Release, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

Dated: June 14, 2024                                         WYNNE LAW FIRM


                                                            /s/ Edward J. Wynne
                                                            Edward J. Wynne
                                                            Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ...........................................................................i

INTRODUCTION ...........................................................................................................1

I.    PROCEDURAL HISTORY .....................................................................................3

II.   STATEMENT OF FACTS ......................................................................................6

III.  SETTLEMENT TERMS .........................................................................................8

    a.    Settlement Fund ............................................................................................8

    b.    Class Definition ............................................................................................9

    c.    Class Representatives and Class Counsel .....................................................9

    d.    Plan of Allocation ......................................................................................10

        i.    Payments to Manager Class Members ...............................................10

        ii.   Class Counsels' Fees and Costs ........................................................10

        iii.  LWDA Payment .................................................................................10

        iv.   General Release Payments: ................................................................10

IV.   THE CLAIMS ADMINISTRATOR DILIGENTLY CONDUCTED THE NOTICE PROCESS .........................................................................................................11

V.    THE COURT SHOULD ORDER FINAL APPROVAL OF THE SETTLEMENT ......12

    a.    The Strength of Plaintiffs' Case ..................................................................13

        i.    Manager Phone Reimbursement Claim .............................................13

        ii.   Employee *Ferra*/Sick Pay Claim .....................................................15

    b.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation ......15

    c.    The Risk of Maintaining Class Action Status Through Trial .............................16

    d.    The Amount Offered in Settlement ..............................................................16

    e.    The Extent of Discovery Completed and the Stage of the Proceedings .............18

    f.    The Experience and Views of Counsel ........................................................19

    g.    The Presence of a Governmental Participant ................................................20

    h.    The Reaction of the Class Members to the Proposed Settlement .......................20

        i.    The Parties Arrived at the Settlement Through Arm's Length Negotiations with the Assistance of a Respected Mediator ...................21

VI.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .............................21

    a.    Numerosity .................................................................................................21

    b.    Commonality ...............................................................................................21

    c.    Typicality ...................................................................................................22

1

         i.      Personal Mobile Phone Expense Reimbursement Claim........................23

2      e.    *Ferra*/Sick Pay Regular Rate Claim ....................................................25

3 CONCLUSION ..............................................................................................................25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Abdullah v. U.S. Sec. Assocs., Inc.,*
    731 F.3d 952 (9th Cir. 2013) ................................................................................................22

4

*Alvarez v. Farmers Ins. Exch.,*
5      No. 3:14-CV-00574-WHO, 2017 WL 2672710 (N.D. Cal. Jan. 17, 2017) ............................18

6

*Arias v. Sup. Ct.,*
    46 Cal.4th 969 (2009) ...........................................................................................................20

7

*Ayala v. Coach, Inc.,*
8      No. 14-CV-02031-JD, 2016 WL 9047148 (N.D. Cal. Oct. 17, 2016) ...................................18

9

*Blandino v. MCM Constr., Inc.,*
    No. C 12-1729 WHO, 2014 WL 11369763 (N.D. Cal. Mar. 6, 2014) ...................................18

10

*Boyd v. Bank of Am. Corp.,*
11      300 F.R.D. 431 (C.D. Cal. 2014) ..........................................................................................24

12

*Carlos v. Wal-Mart Assocs., Inc.,*
    2022 WL 17885691 (C.D. Cal. Sept. 6, 2022) .......................................................................14

13

*Chacon v. Express Fashion Operations LLC,*
14      2021 WL 4595772 (C.D. Cal. June 14, 2021) .......................................................................25

15

*Chavez v. Lumber Liquidators, Inc.,*
    2012 WL 1004850 (N.D. Cal. Mar. 26, 2012) .......................................................................14

16

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),*
17      213 F.3d 454 (9th Cir. 2000) ................................................................................................15

18

*Duran v. U.S. Bank Nat. Assn.,*
    59 Cal. 4th 1 (2014) ........................................................................................................15, 24

19

*Ehret v. Uber Techs., Inc.,*
20      2017 U.S. Dist. LEXIS 22586 (N.D. Cal. Feb. 16, 2023) ......................................................19

21

*Evans v. Wal-Mart Stores, Inc.,*
    2019 WL 7169791 (C.D. Cal. Nov. 25, 2019) .......................................................................25

22

*Ferra v. Loews Hollywood Hotel, LLC,*
23      11 Cal. 5th 858 (2021) ..........................................................................................................22

24

*Gattuso v. Harte-Hanks Shoppers, Inc.,*
    42 Cal.4th 554 (2007) ...........................................................................................................24

25

*General Tel. Co. of Southwest v. Falcon,*
26      457 U.S. 147 (1982) ..............................................................................................................23

27

*Grissom v. Vons Companies, Inc.,*
    1 Cal.App.4th 52 (1991) ........................................................................................................24

28

1   *Gurzenski v. Delta Air Lines, Inc.*,
2       2021 U.S. Dist. LEXIS 220257 ..................................................................................17

3   *Guthrie v. Its Logistics, LLC*,
        2023 U.S. Dist. LEXIS 113514 (E.D. Cal. June 30, 2023) ...........................................18

4   *Hammon v. Barry*,
5       752 F. Supp. 1087 (DCC 1990) ....................................................................................19

6   *Hanlon v. Chrysler Corp.*,
        150 F.3d 1011 (9th Cir. 1998) ...............................................................................22, 23

7   *Hibbs-Rines v. Seagate Techs., LLC*,
8       2009 WL 513496 (N.D. Cal. Mar. 2, 2009) ..................................................................14

9   *Hopkins v. Stryker Sales Corp.*,
        2012 WL 1715091 (N.D. Cal. May 14, 2012) ..............................................................22

10  *In re Armored Car Anti - Trust Litigation*,
11      472 F. Supp. 1357 (ND GA 1979) ................................................................................19

12  *In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*,
        289 F.R.D. 526 (N.D. Cal. 2012), aff'd, 789 F. App'x 9 (9th Cir. 2019) ....................14

13  *In re Google Inc. Street View Elec. Commc'ns Litig.*,
14      21 F.4th 1102 (9th Cir. 2021) .......................................................................................17

15  *In re Immune Response Securities Litigation*,
        497 F. Supp. 2d 1166 (S.D. Ca. 2007) ..........................................................................18

16  *In re Syncor ERISA Litig.*,
17      516 F.3d 1095 (9th Cir. 2008)........................................................................................12

18  *In Re Wells Fargo Home Mortg.*,
        571 F.3d 953 (9th Cir. 2009)..........................................................................................24

19  *Lagunas v. Young Adult Inst., Inc.*,
20      2024 U.S. Dist. LEXIS 41242 (N.D. Cal. Mar. 8, 2024) ..............................................21

21  *Lerwill v. Inflight Motion Pictures, Inc.*,
        582 F.2d 507 (9th Cir. 1978) .........................................................................................23

22  *Levya v. Medline Indus. Inc.*,
23      716 F.3d 510 (9th Cir. 2013) .........................................................................................23

24  *Marr v. Bank of Am.*,
        No. 09–cv–05978 WHA, 2011 WL 845914 (N.D. Cal. Mar. 8, 2011)...........................24

25  *Molski v. Gleich*,
26      318 F.3d 937 (9th Cir. 2003).........................................................................................21

27  *Nguyen v. Wells Fargo Bank*,
        No. 15-CV-05239-JCS, 2016 WL 5390245 (N.D. Cal. Sept. 26, 2016)........................24

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Officers for Justice v. Civil Service Com.*,
  688 F.2d 615 (9th Cir. 1982)...................................................................................12, 21

*Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ..............................................................................................19

*Rope v. Auto–Chlor Sys. of Wash., Inc.*,
  220 Cal. App. 4th 635 (2013)............................................................................................14

*Sarkisov v. StoneMor Partners L.P.*,
  No. 13-CV-04834-JD, 2015 WL 1249169 (N.D. Cal. Mar. 18, 2015) ...................................18

*Smith v. Am. Greetings Corp.*,
  2016 U.S. Dist. LEXIS 11718 (N.D. Cal. Jan. 29, 2016) ........................................................19

*Sommers v. Abraham Lincoln Federal Savings & Loan Association*,
  79 F.R.D. 571 (ED PA 1978)..............................................................................................20

*Steinberg v. Carey*,
  470 F. Supp. 471 (NY 1979) ..............................................................................................19

*Stuart v. RadioShack Corp.*,
  641 F.Supp.2d 901 (N.D. Cal. 2009) ................................................................................24

*Takacs v. A.G. Edwards & Sons, Inc.*,
  444 F. Supp. 2d 1100 (S.D. Cal. 2006)..............................................................................24

*Troester v. Starbucks Corp.*,
  5 Cal.5th 829 (Cal. 2018)...................................................................................................13

*Tsyn v. Wells Fargo Advisors, LLC*,
  No. 14-CV-02552-LB, 2018 WL 11424668 (N.D. Cal. Nov. 1, 2018) ...................................18

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976).............................................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ...................................................................................................13, 16

*Wit v. United Behavioral Health*,
  317 F.R.D. 106 (N.D. Cal. 2016) ........................................................................................22

**Statutes**

California Labor Code
  § 226.7........................................................................................................................22

California Labor Code
  § 246 (k) ....................................................................................................................22

California Labor Code
  § 2802.....................................................................................................................passim

Federal Rules of Civil Procedure
   23(e) ................................................................................................................................12, 21


**Other Authorities**

4 Newberg on Class Actions
   (4th Ed. 2002 & 2008) ...................................................................................................12, 15

5 Moore's Fed. Practice
   (Matthew Bender 3d ed.)...........................................................................................................20

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
   Federal Practice & Procedure § 1778 (2d ed. 1986) ...................................................................23

DLSE Manual
   § 49.1.1.........................................................................................................................................22

Manual for Complex Litigation, Fourth.........................................................................................12

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### INTRODUCTION

Plaintiffs Luke Adelman, Elizabeth Anderson, Ellesse Anderson, Jeffrey Bellows, Katherine Butler, Cheyenne Chitry, Christina Denton, Jacqueline Foster, James Hancock, Donnie Hyso, Casey McKay, Hannah Rothschild, Cassandra Sweeney and Michael Whiter, (collectively "Plaintiffs") seek final approval of this $2,875,000 non-reversionary, arm's-length negotiated, class action, and Labor Code Private Attorneys General Act ("PAGA") settlement between Plaintiffs and Defendant Starbucks Corporation ("Starbucks"). The proposed settlement would fully resolve all claims between Plaintiffs and Starbucks that are pending before this Court.

In addition, the Settlement also resolves two related lawsuits against Starbucks. In this lawsuit, *Adelman, et al. v. Starbucks Corporation*, N.D. Cal. Case No. 3:20-cv-00178-JD (the "Action"), Plaintiffs assert claims against Starbucks on behalf of two putative classes, the "Manager Class" and the "Employee Class." On behalf of the Manager Class, which includes all California store managers and assistant store managers since June 27, 2015, Plaintiffs allege Starbucks violated California law because managers used their personal mobile phones for work without receiving proper reimbursement, wages for time worked, or premiums for interrupted breaks. Accordingly, they assert claims for failure to reimburse business expenses, failure to pay minimum and overtime wages, failure to provide proper meal and rest breaks, failure to provide accurate wage statements, failure to timely pay final wages, and unfair competition. On behalf of the Employee Class, which includes all California nonexempt employees since June 8, 2018, Plaintiffs allege Starbucks violated California law by failing to pay sick pay and break premiums at the proper rate of pay. They assert claims for failure to provide meal and rest break premiums, failure to provide accurate wage statements, failure to timely pay final wages, and unfair competition. Plaintiffs also assert claims for civil penalties under PAGA for these alleged violations, to the extent they were experienced by store managers and assistant store managers since July 8, 2018.

While not before this Court, the settlement also resolves *Harisis, et al. v. Starbucks Corporation*, Los Angeles Super. Ct. Case No. 20STCV11290 and *Hoelzel v. Starbucks Corporation*, Los Angeles Super. Ct. Case No. 21STCV37838, (collectively, the "State Court

Actions").  In the State Court Actions, Plaintiffs assert PAGA claims against Starbucks based on many of the same alleged violations as in this Action, among others, and seek civil penalties on behalf of all California nonexempt employees.  Specifically, they claim: (i) employees used their personal mobile phones for work without receiving proper reimbursement, wages for time worked, or premiums for interrupted breaks since February 5, 2019; (ii) employees experienced meal and rest break violations unrelated to personal mobile phone use (including meal breaks being provided late, meal and rest breaks being interrupted by work, and employees not being not being permitted to leave the store during meal and rest breaks), were provided final pay late, and were provided wage statements that did not accurately list the name of the employer since February 5, 2019; (iii) Starbucks failed to pay sick pay and break premiums at the regular rate of pay since April 6, 2020; and (iv) employees were not paid minimum or overtime wages for time worked off-the-clock on store opening and closing tasks since April 6, 2020. If this settlement is given final approval, the State Court actions will be dismissed.

The Court preliminarily approved the settlement on $2,875,000. (Dkt. No. 140.) Since that time, the class has received notice of the settlement and has shown support for it without objections. As the settlement satisfies all relevant standards for being deemed "fair, adequate and reasonable," Plaintiffs hereby ask the Court to: (1) grant final approval of the settlement pursuant to the terms of the Settlement Agreement; (2) certify the proposed settlement class; and (3) enter judgment.

The Parties participated in a substantial amount of discovery in this Action and the State Court Actions, including written discovery, voluminous productions of documents, data, and contact information, and more than twenty depositions.  The Parties produced three expert reports in this Action.  The Parties also engaged in significant motion practice, including expert motions and motions to dismiss, to compel arbitration, and for summary judgment in this Action, and a motion regarding the manageability of the PAGA claims in the State Court Actions.  Additionally, Plaintiffs and Starbucks fully briefed Plaintiffs' motion for class certification in this Action.  At the class certification hearing, the Court encouraged the Parties to explore settlement.

The Parties participated in a global mediation of this Action and the State Court Actions

on April 6, 2023, before David A. Rotman, but the cases did not settle. However, the Parties continued to engage in settlement discussions following mediation and the hearing on class certification, which resulted in the mediator making a mediator's proposal that both Parties accepted. As a result of the mediator's arm's-length negotiations and proposal, the Parties have agreed to the terms memorialized in this Settlement Agreement as amended.

## I.   <u>PROCEDURAL HISTORY</u>

On June 27, 2019, Plaintiffs Jeffrey Bellows, Katharine Butler, Cheyenne Chitry, Christina Denton, Jorge Gonzalez, James Hancock, Donnie Hyso, Erik Lorack, Cassandra Sweeney and Michael Whiter brought a putative class action in Alameda Superior Court on behalf of themselves and all other individuals who are or have been employed as Store Managers only by Defendant Starbucks Corporation in California during the four years prior to the filing of the action. The complaint alleged a cause of action under Labor Code § 2802 for unreimbursed business expenses and a corresponding cause of action for Unfair Competition pursuant to Business and Professions Code § 17200. On October 27, 2019, Plaintiffs filed a First Amended Complaint adding Plaintiffs Elizabeth Anderson and Jacqueline Foster. The First Amended Complaint also included a third cause of action for penalties pursuant to the Labor Code Private Attorney General Act of 2004 (PAGA), Labor Code § 2698, *et seq*.

On February 14, 2020, Defendant removed the action to the Northern District of California. On March 5, 2021, Plaintiffs filed an administrative motion to consider whether this case should be related to *Brekke, et al., v. Starbucks Corp.*, N.D. Cal. Case 3:21-cv-00751-VC, which was granted on March 22, 2021. (Dkt. No. 37.)

On March 13, 2020, Plaintiffs brought a motion to remand (Dkt. No. 13) which the Court denied on December 31, 2020. (Dkt. No. 29.)

On October 12, 2020, Plaintiffs filed their first discovery letter brief (Dkt. No. 23) which the Court granted on January 5, 2021. (Dkt. No. 30.)

On June 30, 2021, Plaintiffs filed their Second Amended Complaint in which the parties and claims in the two related cases were consolidated. (Dkt. No. 42.) The Second Amended Complaint also added five additional plaintiffs: Luke Adelman, Ellesse Anderson, Sheri Bradley.

1   Hannah Rothschild and Kevin Steinbeck. (*Ibid*.)

2       On July 14, 2021, Defendant filed a motion to dismiss. (Dkt. No. 48.) On August 12, 2021,

3   Defendant filed a motion to compel arbitration. (Dkt. No. 53.) On March 16, 2022, the Court

4   denied the motion to compel except as to plaintiffs Brekke, McKay, Shane-Sanchez, Bradley,

5   Steinbeck and Garland who did not oppose the motion. (Dkt. No. 59.) On March 21, 2022, the

6   Court denied the motion to dismiss finding that the claims of the Second Amended Complaint

7   relate back to the original complaint. (Dkt. No. 60.)

8       On June 8, 2022, Plaintiffs filed a Third Amended Complaint alleging claims under both

9   PAGA and California's UCL arising out of Defendant's alleged failure to pay the proper regular

10  rate of sick time pay. (Dkt. No. 70.) The Third Amended Complaint also deleted the plaintiffs

11  whose cases were sent to arbitration. (*Ibid*.) On September 1, 2022, Plaintiffs Lorack and

12  Gonzales were also dismissed as named plaintiffs. (Dkt. No. 85.)

13      On July 29, 2022, and August 2, 2022, the Parties filed competing discovery letter briefs.

14  (Dkt. Nos. 78 and 79.) After withdrawing its discovery letter brief (Dkt. No. 83), Defendant

15  subsequently filed another discovery letter brief on September 13, 2022. (Dkt. No. 87.) Likewise,

16  Plaintiffs also filed an additional discovery letter brief on September 23, 2022. (Dkt. No. 91.) The

17  Court subsequently addressed all of the Parties' discovery letter briefs on November 30, 2022.

18  (Dkt. No. 97.)

19      On February 16, 2023, Plaintiffs filed their motion for class certification. (Dkt. No. 100.)

20  Defendant filed its opposition on March 24, 2023 (Dkt. No. 102) to which Plaintiffs replied. (Dkt.

21  No. 106.)

22      On March 30, 2023, Defendant filed a motion for partial summary judgment and a motion

23  to exclude expert testimony (Dkt. Nos. 104 and 105) which Plaintiffs opposed on April 13, 2023.

24  (Dkt. Nos. 107 and 108.) Defendant replied on April 20, 2023. (Dkt. Nos. 109 and 110.)

25      On May 4, 2023, Plaintiffs' motion for class certification was argued as well as

26  Defendant's motion for partial summary judgment and to exclude expert testimony. (Dkt. No.

27  111.)

28      On May 18, 2023, Defendant filed a second motion to exclude expert testimony (Dkt. No.

1 | 114) which Plaintiffs opposed on June 1, 2023. (Dkt. No. 118.)

2 |       On June 1, 2023, Plaintiff filed a motion to modify the scheduling order. (Dkt. No. 116.)

3 |       On June 7, 2023, Plaintiffs filed a notice of settlement. (Dkt. No. 119.) As a result, the

4 | Court set a deadline to file a motion for preliminary approval (Dkt. No. 120) which was

5 | subsequently amended as a result of a stipulation by the Parties. (Dkt. Nos. 122 and 123.)

6 |       In addition to the extensive law and motion practice summarized above, the Parties also

7 | engaged in extensive discovery. For instance, the Parties conducted the following discovery:

8 |       ● Both Parties took approximately 18 depositions including expert depositions;

9 |       ● Defendant served 96 sets of written discovery consisting of 3,082 questions which

10 | consisted of 40 sets of document demands, 32 sets of special interrogatories, 12 sets of form

11 | interrogatories, and 12 sets of requests for admission.

12 |       ● In response, Plaintiffs produced approximately over 17,000 pages of documents.

13 |       ● Plaintiffs served nine (9) sets of written discovery consisting of 172 questions which

14 | consisted of four (4) sets of special interrogatories, four (4) sets of document demands, one (1)

15 | set of requests for admission, and issued approximately 25 subpoenas.

16 |       ● In response, Defendant produced approximately 16,000 documents.

17 | (Decl. of Edward J. Wynne, "Decl. of Wynne" ¶ 2.)

18 |       The Parties participated in a global mediation of this Action and the State Court Actions

19 | on April 6, 2023 before David A. Rotman, but the cases did not settle. However, the Parties

20 | continued to engage in settlement discussions following mediation and the hearing on class

21 | certification, which resulted in the mediator making a mediator's proposal that both Parties

22 | accepted.

23 |       On September 19, 2023, Plaintiffs filed their Motion for Preliminary Approval of Class

24 | Action Settlement. (Dkt. No. 130.) On October 26, 2023, the Court conducted a hearing on the

25 | Motion for Preliminary Approval; the Court denied the Motion without prejudice to address

26 | certain issues. (Dkt. No. 135.) Specifically, the Court identified specific concerns with the

27 | proposed Settlement related to the form of the class notice and the timing of the filing of a motion

28 | for attorneys' fees and costs, denied the motion without prejudice, and directed Plaintiffs to file a

1   renewed motion for preliminary approval. The Parties revised the class notice, set forth a schedule

2   for the filing of the motion for attorneys' fees and costs that provides 60 days between the filing

3   of the motion for attorneys' fees and costs and the deadline to opt-out or object, and revised the

4   terms of the Settlement Agreement related to address the Court's concerns related to the

5   Employee Class.

6      After addressing those issues, on November 16, 2023, Plaintiffs filed their Renewed

7   Motion for Preliminary Approval of Class Action Settlement. (Dkt. No. 139.) On January 2, 2024,

8   the Court granted Plaintiffs' Renewed Motion for Preliminary Approval. (Dkt. No. 140.) The

9   Court granted preliminary approval of the settlement, provisionally certified the settlement class,

10  and ordered the Settlement Administrator to provide notice to putative class members. *Id*.

11     Following preliminary approval, Plaintiff's counsel coordinated with the administrator to

12  ensure the proper mailing and emailing of the Class Notice and closely monitored the notice

13  process, including responding to multiple inquiries from Class Members. (Decl. of Wynne, ¶ 5.)

14     On January 10, 2024, the Gross Settlement Amount of $2,875,000.00 was deposited into

15  an interest-bearing QSF account established by Simpluris. On February 20, 2024, Notices were

16  emailed to the Class Members for whom there was a valid email address available.   For Class

17  Members for whom there was not a valid email address available, or whose emails were returned

18  as undeliverable, Notices were then sent to them by U.S. Mail. The deadline for exclusions or

19  objections was May 4, 2024.  Simpluris received nineteen (19) requests for exclusion and no

20  objections from Class Members. (Declaration of Settlement Administrator Markus Bulthuis "Decl.

21  of Bulthuis" ¶¶ 7, 10-16.)

## II.   STATEMENT OF FACTS

23     Starbucks' locations in California are staffed by hourly employees. All locations employ

24  a store manager, and many locations also employ an assistant manager (collectively, "managers")

25  as well as a variety of non-managerial employees. District managers oversee a number of stores

26  in their geographical area who store managers report to.

27     Plaintiffs allege that managers use their personal mobile phones to receive

28  communications from their district managers regarding assigned duties and tasks, corporate

directives, and other operational issues. Plaintiffs allege that district managers call and text managers directly on their mobile phones. Plaintiffs allege that directions from district managers sometimes include requests to use their mobile phones to send images of store merchandise displays or damages or malfunctioning equipment. Plaintiffs allege that many of these calls involve urgent matters. Plaintiffs allege that district managers call/text managers at all times of day, frequently during their days off, before or after scheduled hours, and during a meal or rest breaks. Plaintiffs allege that while managers may not know the urgency of calls from their supervisors until they answer and/or read the communication itself, the expectation is that managers be available to their district managers, both during and outside of their scheduled shifts, and promptly answer their calls or texts.

In support of their motion for class certification, Plaintiffs submitted deposition testimony from Starbucks' corporate witnesses, their own deposition testimony, approximately 300 declarations from absent class members, Defendant's corporate policies and procedures, data related to Defendant's reimbursement of personal mobile phone expenses, and a pilot study taken by approximately 50 managers. Plaintiffs allege that the evidence submitted at class certification supported a finding that managers used their personal mobile phones for Starbucks' work, they were not reimbursed, and they used their personal mobile phones outside of scheduled hours. Plaintiffs also submitted approximately 300 declarations of absent class members likewise testifying about their use of personal mobile phones for work and lack of reimbursement.

Starbucks' defense relies heavily on its written policy that mobile phone use is prohibited in all but the most urgent of matters. Starbucks' corporate representative offered the example of the store being threatened by wildfires as a permissible use. Plaintiffs contend that the policy is contrary to the "unwritten" rule that managers be available at all times for scheduling and other store operations purposes.

Starbucks' defense also relies on its phone reimbursement forms. Plaintiffs allege that while the form may have been sent to the stores, it included no explanation or further context. It also required anyone seeking reimbursement to provide extensive information and a particularly complicated reimbursement formula. Starbucks reported distributing approximately $48,000 in

reimbursements to all employees during the entire statutory period covered by this case which Plaintiffs allege is effectively a *de minimis* amount.

As a result of Plaintiffs' allegations of unreimbursed expenses and uncompensated breaks and off-the-clock work, Plaintiffs allege that Defendant did not provide managers with accurate wage statements as required by California law. Similarly, Plaintiffs allege that Defendant did not provide managers with full payment of all wages owed at the end of employment.

Finally, there is a separate and largely undisputed claim that Starbucks did not pay sick pay and missed meal and break period premiums at the regular rate as required by the California Labor Code during part of the statutory time covered by these actions. Instead, it paid those premiums at the employee's hourly rate, which does not account for all remuneration as required by the regular rate.

## III.    SETTLEMENT TERMS

The settlement details are set forth in the Joint Stipulation of Class Action and PAGA Settlement and Release and Amendment to Class Action and PAGA Settlement and Release attached to the Declaration of Edward J. Wynne as Exhibit No. 1. A summary is set forth below:

### a.    Settlement Fund

In return for a release of all claims that were asserted in the Action (and the State Court Action), Starbucks shall create a non-reversionary $2,875,000 Gross Settlement Fund. Because this is not a claims-made settlement, Manager Class Members will not be required to make a submission to receive payment from the settlement. (Decl. of Wynne, ¶ 8.) As set forth in more detail below, members of the Employee Class will not be receiving a direct payment. Instead, the amount attributed to the value of the Employee Class will be paid to two *cy pres* beneficiaries. (Decl. of Wynne, ¶ 7.)

Of the $2,875,000 Gross Settlement Fund, $200,000 is attributed to the PAGA claims.  Of this amount, 75% (or $150,000) is allocated to the State of California as is required by PAGA. The other 25% (or $50,000) shall be retained in the Net Settlement Fund. (Decl. of Wynne, ¶ 9.)

After certain deductions identified below, all Manager Class Members who do not opt out will be paid on a pro rata basis based on the number of workweeks they worked for Starbucks in

California during the settlement period, which extends from June 27, 2015, to October 25, 2023, for the Manager Class. (Decl. of Wynne, ¶ 11.)  The portion of the Net Settlement Amount allocated to the Employee Class claims will be paid *cy pres* to Legal Aid Society – Employment Center in San Francisco and Bet Tzedek Employment Rights Project in Los Angeles, as discussed further below. (Decl. of Wynne, ¶ 7.)

Starbucks will pay for the employer's share of payroll taxes on the wage portion of each Manager Class Member's recovery separate and apart from the Gross Settlement Amount. Employer Payroll Taxes will be computed by the Settlement Administrator based on the amounts to be paid to each member of the Manager Class.  (Decl. of Wynne, ¶ 10.)

The deductions from the gross settlement fund include attorneys' fees and costs, payment to the California Labor Workforce Development Agency, general release payments, *cy pres* payments, and the cost of settlement administration. (Decl. of Wynne, ¶ 12.)

Since the deposit of the Gross Settlement Amount in the interest-bearing Qualified Settlement Fund, the account earned $5,636.24 in interest as of June 3, 2024.  The interest earned has been apportioned between the Class and the Attorneys. (Decl. of Bulthuis, ¶ 7.)

**b.    Class Definition**

Subject to Court approval, the Parties have stipulated to certification, for settlement purposes only, of a class defined as individuals employed by Starbucks within the State of California as (i) a Store Manager or Assistant Store Manager from June 27, 2015, through October 25, 2023, and/or (ii) a nonexempt employee from June 8, 2018, through October 25, 2023. (Decl. of Wynne, ¶ 13.)

**c.    Class Representatives and Class Counsel**

Subject to Court approval and for settlement purposes only, the Parties have stipulated that Plaintiffs Luke Adelman, Elizabeth Anderson, Ellesse Anderson, Jeffrey Bellows, Katherine Butler, Cheyenne Chitry, Christina Denton, Jacqueline Foster, James Hancock, Donnie Hyso, Casey McKay, Hannah Rothschild, Cassandra Sweeney and Michael Whiter be appointed class representatives. Also subject to Court approval, the parties have stipulated that Edward J. Wynne, Wynne Law Firm, Gregg I. Shavitz, Shavitz Law Group, P.A., and Michael D. Singer, Cohelan,

1    Khoury & Singer be appointed class counsel. (Decl. of Wynne, ¶ 14.)

2           **d.**      **Plan of Allocation**

3                **i.**      **Payments to Manager Class Members**:

4    From the Net Settlement Amount, payments to individual members of the Manager Class

5    shall be calculated and apportioned based on the number of workweeks during the settlement

6    class period as a manager after deductions for attorneys' fees and costs, payment to the LWDA,

7    general release payments, *cy pres* payments, and the cost of settlement administration.  (Decl. of

8    Wynne, ¶ 15.)

9    The Net Settlement Fund is $1,585,068.12.   Of this amount, $1,525,068.12 will be

10    apportioned to the Manager Class and $60,000, in an indirect payment, will be apportioned to the

11    Employee Class. (Decl. of Bulthuis, ¶ 13.)

12                **ii.**      **Class Counsels' Fees and Costs:**

13    Pursuant to Court order, Plaintiffs filed their Motion for Attorneys' Fees and Costs on

14    February 27, 2024. (Dkt. No. 141.) The motion was also posted on the Administrator's website.

15    (Decl. of Bulthuis, ¶ 5) As set forth in the motion, Class Counsel is seeking a fee award not to

16    exceed $718,750 or 25% of the Gross Settlement Amount reimbursement of costs in an amount

17    not to exceed $235,000 plus the accrued interest. (Dkt. No. 141; Decl. of Bulthuis, ¶ 7)

18                **iii.**      **LWDA Payment:**

19    The Parties have agreed to pay the LWDA $150,000 (or 75% of the $200,000 attributed

20    to the PAGA claims) per Labor Code § 2699 (i) to settle this claim, and the Parties have submitted

21    or will submit this settlement to the California Labor Workforces Development Agency

22    ("LWDA") per California Labor Code section 2699(l)(2). (Decl. of Wynne, ¶ 16.)

23                **iv.**      **General Release Payments:**

24    In consideration for general releases that absent class members will not be executing,

25    Starbucks will be paying $5,000 payments to each of the Releasing Parties. (Decl. of Wynne, ¶

26    17.) The General Release Payments are addressed in Plaintiffs' Fee and Cost Motion (Dkt. No.

27    141.)

28

## IV.    THE CLAIMS ADMINISTRATOR DILIGENTLY CONDUCTED THE NOTICE PROCESS

The procedures for giving notice to the Class Members, as set forth in the Renewed Motion for Preliminary Approval and approved by the Court, have been fully and properly carried out. (Decl. of Bulthuis ¶¶ 3-11.) The Court approved the proposed Class Notice and directed the mailing of the Notice to Class Members by first-class mail and email in accordance with the proposed schedule. (Dkt. Nos. 139, 140.) Pursuant to the Settlement Agreement, on or about January 19, 2024, Counsel for Defendant provided the claims administrator, Simpluris, the required information (the "Class List"). The Class List contained data for one hundred eighty thousand, seven hundred sixty-one (180,761) Class Members (Decl. of Bulthuis ¶ 8.) On February 20, 2024, the claims administrator emailed the Class Notice to the Settlement Class. (Decl. of Bulthuis ¶ 10.) The claims administrator also mailed Class Notices to the 9,722 individuals on the Class List for whom there was no email address available, for whom there was only an invalid email address available, or for whom the emailed Notice was ultimately returned as undeliverable. (Decl. of Bulthuis ¶ 11.) The Class Notice advised these individuals that they could remain a Class Member and take no action, submit a request for exclusion, or submit an objection to the settlement. (Decl. of Bulthuis Exhibit A.) Prior to mailing the notices, the claims administrator also established a toll-free number for Class Members to call if they had questions about the settlement. (Decl. of Bulthuis ¶ 4.)  In addition to the toll-free number, the administrator also established a settlement website, www.StarbucksCaliforniaSettlement.com, hosting important documents including the Preliminary Approval Order, Settlement Agreement, Plaintiffs' Motion for Attorneys' Fees and Costs, and the Notice. The Settlement Website also includes pages to address Frequently Asked Questions, important dates for the matter, and contact information for Class Members to reach out to the Claims Administrator. (Decl. of Bulthuis ¶ 5.)

As of the opt-out deadline of 180,761, 1,053 Class Notices were returned to the administrator. (Decl. of Bulthuis ¶¶ 8, 12.) As for the email notice, of the 179,286 emails sent, the administrator received 5,005 bounce-backs, representing approximately less than 3% of all notice emails sent. (Decl. of Bulthuis ¶ 10.) After updating the mailing addresses through the

NCOA, Notices were mailed via First Class Mail to 9,772 Class Members for whom there was no email address available, for whom there was only an invalid email address available, or for whom the emailed Notice was ultimately returned as undeliverable. (Decl. of Bulthuis ¶ 10-11.) The administrator attempted to locate a more current address for all undeliverable Class Notices. (Decl. of Bulthuis ¶ 12.) Pursuant to these efforts, the administrator located 899 new addresses and promptly re-mailed the Notice packets to all Class Members for whom a new address was found. (Decl. of Bulthuis ¶ 12.) In the end, there were 163 undeliverable Notices, representing approximately .09% of all notices sent. (Decl. of Bulthuis ¶ 12.)

Finally, the Class has shown support for the settlement. At the conclusion of the opt-out and objection period, the administrator received 19 requests for exclusion (.01% of notices delivered) and no objections. (Decl. of Bulthuis ¶¶ 15-16.) Class Counsel also received telephone calls from several Class Members who voiced support for the Settlement. (Decl. of Wynne ¶ 32.)

## V.    <u>THE COURT SHOULD ORDER FINAL APPROVAL OF THE SETTLEMENT</u>

A class action may not be dismissed, compromised or settled without court approval. Fed. R. Civ. P. ("FRCP") 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). At the same time, the law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of formal litigation. *See* 4 Newberg § 11.41 (and cases cited therein); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

On a motion for final approval of a class action settlement, the court inquires whether the settlement is "fair, adequate and reasonable," meaning that "the interests of the class are better served by the settlement than by further litigation." Manual for Complex Litigation, Fourth, § 21.6 at 309; *see also* Fed. R. Civ. Pro. 23(e)(1)(C); *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982). The fairness inquiry involves the balancing of several factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the

proceedings; (6) the experience and views of counsel; and (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Vill., LLC v. Gen. Elec*, 361 F.3d 566, 575 (9th Cir. 2004). Here, each of these factors weighs in favor of approving the settlement.

### a.    The Strength of Plaintiffs' Case

The Action and the State Court Actions all involve claims related to Starbucks' policy and practice of contacting non-exempt hourly employees on their mobile phones after working hours while they were not on shift. This Action alleges claims for wages owed, while the State Court Actions involve derivative claims, including failure to reimburse for expenses and meal and rest breaks claims.

Although Plaintiffs' claims are strong, there are significant risks associated with the litigation. These include Starbucks' written policies forbidding cell phone use in all but the most urgent circumstances and its phone reimbursement forms. Plaintiffs assert that these policies are overridden by Starbucks' actual conduct in contacting its employees via cell phone when they are not working.

Nonetheless, the fact that the substance of Starbucks' policies was contested posed a significant risk to Plaintiffs. (Decl. of Wynne ¶ 25.) Even more significantly, there was a high legal risk on the issue of whether time for these off-hours communications was *de minimis*. (Decl. of Wynne ¶ 25.) The California Supreme Court has recognized the *de minimis* doctrine, which arguably could apply to these claims. *Troester v. Starbucks Corp.*, 5 Cal.5th 829 (Cal. 2018).

If Starbucks prevailed on either issue – that its policies proscribed the conduct or that the time was *de minimis* – that would be dispositive of Plaintiffs' claims. There was additional risk that the Court would not certify the class because of manageability issues under *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011).

Plaintiffs set forth below the relative strengths of each of Plaintiffs' claims.

### i.    Manager Phone Reimbursement Claim

With respect to certification of the phone reimbursement claim, Defendant vigorously opposed certification pointing out that Plaintiffs' case was not a challenge to Defendant's written

policy, but a challenge to an alleged *de facto* policy. Defendant argued that no common evidence could address that theory of the case. Specifically, Defendant argued that the reasons why a manager used his or her phone and whether Starbucks had reason to know of such use were highly individual. Defendant pointed to a number of cases where certification was not granted based on the same arguments. *See, e.g., Carlos v. Wal-Mart Assocs., Inc.*, 2022 WL 17885691, at *8 (C.D. Cal. Sept. 6, 2022) (where policy provided for reimbursement, individualized inquiries predominated regarding whether and why employees used personal mobile phones for work); *Chavez v. Lumber Liquidators, Inc.*, 2012 WL 1004850, at *9–10 (N.D. Cal. Mar. 26, 2012) (given reimbursement policy, "Court would need to scrutinize each class member's claimed expenses"); *In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*, 289 F.R.D. 526, 547 (N.D. Cal. 2012), aff'd, 789 F. App'x 9 (9th Cir. 2019) (A reimbursement policy weighs against certification for a section 2802 claim.)

At the hearing on Plaintiffs' motion for class certification, the Court appeared to agree with Starbucks and expressed significant concerns about whether Plaintiffs could satisfy the elements for class certification.

Plaintiffs could also expect that Starbucks would challenge manageability of the PAGA claims. While Plaintiffs believe the claims are manageable, Starbucks contends they are unmanageable for the same reasons it asserts regarding class certification. Starbucks would argue that manageability poses an even greater challenge than class certification because, to recover penalties, a PAGA plaintiff must prove each and every predicate Labor Code violation as to each aggrieved employee for each pay period for which the plaintiff seeks penalties. *See Rope v. Auto–Chlor Sys. of Wash., Inc*., 220 Cal.App.4th 635, 651 n.7 (2013) ("PAGA requires that the representative plaintiff establish that the employer have committed the Labor Code violations for which recovery is sought against the aggrieved employees."); *Hibbs-Rines v. Seagate Techs., LLC*, 2009 WL 513496, at *4 (N.D. Cal. Mar. 2, 2009) ("Plaintiff will have to prove Labor Code violations with respect to each and every individual on whose behalf plaintiff seeks to recover civil penalties under PAGA."). While Plaintiffs disagree with this position, Starbucks' position nevertheless presents a risk to Plaintiffs' case. Moreover, while Plaintiffs believe the PAGA

1    claims have real value, Starbucks would likely contend that PAGA penalties awards have

2    historically been relatively low and that penalties are subject to dramatic reduction by courts.

3                    **ii.        Employee *Ferra*/Sick Pay Claim**

4            While Plaintiffs believe the evidence on the merits of Plaintiffs *Ferra*/sick pay claim is

5    quite strong, Plaintiffs' analysis of the damages reveals that the claim has little to no value. The

6    reason for this is because *Ferra*/sick pay claims require that the employee have earned a non-

7    discretionary bonus during the same pay period when the employee worked overtime, received a

8    meal/rest break premium, or received sick pay. These conditions were infrequent based on the

9    available evidence. Further, because class members' bonuses were modest, the difference

10   between the regular rate (which takes into consideration all hours worked) and the hourly rate is

11   literally measured in cents. Plaintiffs' expert did an analysis of Starbucks' payroll records. See,

12   Dkt. No. 103-2, Tables 9a and 9b (un-extrapolated). The extrapolated amount comes to less than

13   $30,000 for all classes as potentially owing and less than $60,000 if penalties are included. (Decl.

14   of Wynne, ¶ 22.)

15                **b.        The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

16           In making the fairness determination, the Court may also weigh the risk, expense, and

17   complexity of continued litigation against the certainty and immediacy of recovery from a

18   settlement. *See Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 458 (9th

19   Cir. 2000). "In most situations, unless the settlement is clearly inadequate, its acceptance and

20   approval are preferable to lengthy and expensive litigation with uncertain results." 4 Newberg on

21   Class Actions § 11.41 (4th ed. 2002 & Supp. 2008).

22           This factor supports final approval here. This counsel's experience in *Duran v. U.S. Bank

23   N.A.*, 59 Cal.4th 1 (2014), perhaps best exemplifies the risk, expense, complexity and duration of

24   further litigation. Counsel herein was successful in obtaining certification for that case and

25   subsequently prevailed at trial after eight years of litigation only to have the entire judgment and

26   certification ultimately reversed by the California Supreme Court after an additional five years of

27   litigation. The case was remanded back to the Superior Court where class certification was denied,

28   and plaintiff's subsequent appeal was denied. (*Id.*) Even prevailing at the trial court is no

1    guarantee of recovery, especially against a large corporate defendant with extensive resources

2    like Starbucks. In essence, the risk in continued litigation is extremely high and the class members

3    and aggrieved employees could ultimately end up with nothing. Thus, it is Counsels' informed

4    opinion that benefits of this settlement substantially outweigh the risk and that settlement at this

5    juncture is in the best interests of the class, aggrieved employees, and the State of California.

6    (Decl. of Wynne, ¶ 4.)

7           Given the risks outlined above, the issues in this case were complex and the risk for

8    Plaintiff and the Class Members was high, given the uncertainty. (Decl. of Wynne, ¶ 27.) Finally,

9    given the complexity and unsettled nature of the issues in this case, it is likely that any outcome

10   at trial would have resulted in a lengthy and costly appeal. (Decl. of Wynne, ¶ 27.) An appeal

11   would result in further delay for the Class Members, who are waiting for a resolution. (Decl. of

12   Wynne, ¶ 27.)

13          **c.**    **The Risk of Maintaining Class Action Status Through Trial**

14          In class actions, decertification is always a possibility. (Decl. of Wynne, ¶ 28.) Here,

15   Plaintiffs had to acknowledge this risk in light of the rigorous requirements for evidence imposed

16   by *Dukes*. This adds another element of risk to Plaintiffs' ability to maintain class action status

17   through trial. (Decl. of Wynne, ¶ 28.)

18          **d.**    **The Amount Offered in Settlement**

19          Starbucks will pay $2,875,000 (of which $200,000 will be designated as PAGA penalties).

20   The Net Settlement Fund is $1,585,068.12. The Manager Class is apportioned $1,525,068.12 of

21   that amount and there are 7,277 individuals in the Manager Class. (Decl. of Bulthuis ¶¶ 13-14.)

22   On a head count basis, this comes to an average payout of approximately $209.57 per Manager

23   Class member. The Employee Class is apportioned $60,000 and consists of approximately

24   165,000 individuals. As a result, the amount apportioned to the Employee Class will be paid to

25   two *cy pres* beneficiaries: (1) Legal Aid Society – Employment Center in San Francisco, and (2)

26   Bet Tzedek Employment Rights Project in Los Angeles. Both organizations provide, among other

27   services, legal services to people who cannot otherwise afford them. (Decl. of Wynne, ¶ 7.)

28          At certification, Plaintiffs estimated that Managers used their personal mobile phones

22.32% of the time. This number was calculated based on the total work time in a week divided by the total number of hours in a week.[1] Plaintiffs also estimated that the average monthly mobile phone bill is $76. *See Gurzenski v. Delta Air Lines, Inc.*, 2021 U.S. Dist. LEXIS 220257 at p.*10. Based on this ratio amount of $16.96 per month and the months at issue in the litigation, Plaintiffs estimated Defendant's liability to be approximately $3,000,000 of unpaid personal mobile phone expenses before interest and approximately $4,000,000 including interest.[2]

Plaintiffs have allocated $1,525,068.12 to the Manager Class for this claim. This amount comes to approximately 50% of Defendant's total estimated exposure for this claim (before interest) or approximately 38% including interest. See, Dkt. 103-2, Table 1. Plaintiffs submit that this allocation is fair, reasonable and adequate under the facts and circumstances of this case. (Decl. of Wynne, ¶ 23.)

Plaintiffs ascribe little value to the claims for failure to pay minimum and overtime wages, failure to provide proper meal and rest breaks, failure to provide accurate wage statements, or failure to timely pay final wages for purposes of this analysis, due to the difficulties both at certification and on merits. (Decl. of Wynne, ¶ 24.)

For the Employee Class, as stated above, the total damages and penalties are relatively insignificant at $60,000. However, there are approximately 172,000 members of the Employee Class. Therefore, the average payment would be approximately 35 cents. Therefore, the cost of preparing and mailing a check would exceed the value of the check itself and the likelihood of someone depositing the check is remote. Under this circumstance, the Parties have agreed to make a *cy pres* payment instead. *See In re Google Inc. Street View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1115 (9th Cir. 2021) (*cy pres* payments appropriate where direct payments to class members is unfeasible). The Parties have agreed to pay $60,000 to two charitable organizations evenly split between: (1) Legal Aid Society – Employment Center in San Francisco, and (2) Bet Tzedek Employment Rights Center in Los Angeles. Both organizations provide, among other services, legal services to people who cannot otherwise afford them. (Decl. of Wynne, ¶ 7.) *See, e.g.*,

---

[1] 37.5 hours (7.5 hour shifts x 5 days) / 168 hours = 22.32%.

[2] $76 x 22.32% = $16.96 per month.

*Sarkisov v. StoneMor Partners L.P.*, 2015 WL 5769621, at *2 (N.D. Cal. Sept. 30, 2015) (approving these organizations as *cy pres* beneficiaries in an employment class action settlement).

The PAGA payment is entirely consistent with amounts awarded by other courts both in terms of a relative amount and absolute amount. As set forth above, the parties have designated $200,000 for the PAGA payment. The total PAGA payment of $200,000 is 7% of the Gross Settlement Amount.

In *Ayala v. Coach, Inc.*, No. 14-CV-02031-JD, 2016 WL 9047148 (N.D. Cal. Oct. 17, 2016) this Court approved a $1,750,000 settlement with $5,000 allocated to the PAGA claim representing .2% of the total settlement amount. *Id.* at *1. Also, in *Sarkisov v. StoneMor Partners L.P.*, No. 13-CV-04834-JD, 2015 WL 1249169 (N.D. Cal. Mar. 18, 2015) this Court approved a $850,000 settlement with $10,000 allocated to the PAGA claims representing 1.1% of the total settlement amount. *Id.* at *1. Other courts in the Northern District have likewise approved similar allocations. For instance, in *Tsyn v. Wells Fargo Advisors, LLC*, No. 14-CV-02552-LB, 2018 WL 11424668 at *3 (N.D. Cal. Nov. 1, 2018), Judge Beeler approved a $20,000 allocation to the LWDA from a $9,500,000 gross settlement representing .2% of the total settlement. In *Alvarez v. Farmers Ins. Exch.*, No. 3:14-CV-00574-WHO, 2017 WL 2672710, at *2 (N.D. Cal. Jan. 17, 2017), an FLSA case, Judge Orrick approved a payment of $30,000 to the LWDA from a $4,900,000 settlement representing .6% of the total settlement. In *Blandino v. MCM Constr., Inc.*, No. C 12-1729 WHO, 2014 WL 11369763, at *2 (N.D. Cal. Mar. 6, 2014), a wage and hour class action, Judge Orrick approved a $25,000 to the LWDA from a $865,000 settlement representing 2.8% of the total settlement.

Here, the $200,000 allocation to the PAGA claim represents 7% and is therefore within the range of allocations courts have approved.

### e.    The Extent of Discovery Completed and the Stage of the Proceedings

A class action settlement must be informed by sufficient discovery. *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Ca. 2007). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Guthrie v. Its Logistics, LLC*, 2023 U.S. Dist. LEXIS 113514, at *5 (E.D. Cal. June 30, 2023) (citation omitted).

Plaintiff conducted extensive discovery. The Parties took 18 depositions, Defendant served over 3,000 discovery requests which generated over 17,000 pages of documents produced by Plaintiffs, Plaintiffs propounded 172 discovery requests which generated 16,000 documents from Defendant. Plaintiffs also served subpoenas and engaged in informal discovery. Plaintiffs also received informal discovery from Starbucks prior to mediation which included extensive and detailed data sets. This information allowed Plaintiffs to refine their calculations and estimates. Based on the evidence and counsel's extensive experience in wage-and-hour class claims, Plaintiffs were able to make an informed decision that settlement was in the best interests of the class.

As outlined above, the Parties in this case conducted substantial discovery, both written and depositions. *See supra*. Plaintiff used information gained from these depositions and their extensive written discovery to prepare the mediation brief and to inform settlement discussions at the mediation. (Decl. of Wynne, ¶ 3.)

### f.    The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). The opinion of experienced counsel familiar with the claims being asserted "should be given a presumption of reasonableness." *Ehret v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 22586, at *5 (N.D. Cal. Feb. 16, 2023) (citation omitted); *see also Smith v. Am. Greetings Corp.*, 2016 U.S. Dist. LEXIS 11718, *5 (N.D. Cal. Jan. 29, 2016) ("Here, class counsel have demonstrated that they are sufficiently informed about the current dispute and that [counsel] has more than 20 years of experience defending and prosecuting class actions. *** In light of the foregoing, class counsel's support for the settlement weighs in favor of approving the settlement.").

Courts do not substitute their judgment for that of the proponents, particularly when settlement has been reached by experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F. Supp. 1087 (DDC 1990); *Steinberg v. Carey*, 470 F. Supp. 471 (NY 1979); *In re Armored Car Anti - Trust Litigation*, 472 F. Supp. 1357 (ND GA 1979); *Sommers v. Abraham*

1    *Lincoln Federal Savings & Loan Association*, 79 F.R.D. 571 (ED PA 1978).

2    While the recommendations of counsel proposing the settlement are not conclusive, the

3    court can properly take them into account, particularly if they have been involved in litigation for

4    some period of time, appear to be competent, have experience with this type of litigation, and

5    significant discovery has been completed. In this case, Plaintiffs and the class are represented by

6    competent and highly experienced counsel who have expertise in wage and hour class and

7    representative actions and are deeply familiar with the claims at issue here. Plaintiffs' counsel

8    recommends the proposed settlement as fair, adequate and reasonable to the class members and

9    in their best interests. (Decl. of Wynne, ¶¶ 23, 29.)

10    In the instant case, the settlement was negotiated by experienced counsel, who believe that

11    it is fair and reasonable, and in the Class's best interests. Plaintiffs' counsel are well versed in

12    class action litigation and have diligently and aggressively pursued this action. (Decl. of Wynne,

13    ¶ 30.) Wynne Law Firm, Shavitz Law Group PA, and Cohelan Khoury and Singer focus a

14    substantial percentage of their practice on wage and hour violations. (Decl. of Wynne, ¶ 31.) A

15    more complete recitations of Plaintiffs' counsel's expertise is contained within Plaintiffs' Motion

16    for Approval of Attorneys' Fees and Costs and General Release Payments. (Dkt. No. 141.) After

17    factoring in the risks explained above, Class Counsel believes that the proposed settlement is fair

18    and reasonable.

19    **g.    The Presence of a Governmental Participant**

20    There are no direct governmental participants in this action; however, the PAGA claim is

21    brought by the Named Plaintiffs on behalf of the State of California. Pursuant to PAGA, the State

22    of California has granted Plaintiffs the right to stand in its shoes to enforce the PAGA claims in

23    this case for themselves and other aggrieved employees. This factor weighs in favor of approval.

24    *See Arias v. Sup. Ct.,* 46 Cal.4th 969 (2009).

25    **h.    The Reaction of the Class Members to the Proposed Settlement**

26    "The reactions of the members of a class to a proposed settlement is a proper consideration

27    for the trial court." 5 Moore's Fed. Practice § 23.85[2][d] (Matthew Bender 3d ed.). Here, there

28    were 19 objections to the proposed Settlement (.01%), and no opt-outs. (Decl. of Bulthuis, ¶¶ 15-

46.) Class Counsel also received telephone calls from several Class Members who voiced support for the Settlement. (Decl. of Wynne, ¶ 32.)  Thus, the reaction of class members on the whole is positive and weighs in favor of approval. (Decl. of Wynne, ¶ 32.)

> **i.    The Parties Arrived at the Settlement Through Arm's Length Negotiations with the Assistance of a Respected Mediator**

As noted by the Ninth Circuit, the eight listed factors analyzed above is "by no means an exhaustive list of relevant considerations." *Officers for Justice*, 688 F.2d 615, 625 (9th Cir. 1982). As such, courts often inquire into the procedure by which the settlement was reached. Here, the Settlement was reached after extensive discovery described above. (Decl. of Wynne, ¶¶ 2-3.) Following discovery, the Parties engaged in a full-day mediation with experienced mediator David Rotman, and settled only after extensive arm's length negotiations. (Decl. of Wynne, ¶¶ 3-4.) This procedure weighs in favor of approving the settlement.

## VI.    <u>THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS</u>

Although the Court conditionally certified the Settlement Class in its Preliminary Approval Order, presently the Court should also conclude that the requirements of Federal Rule of Civil Procedure 23 are met and certify the Settlement Class for purposes of final approval. In evaluating a class for settlement purposes under Federal Rule of Civil Procedure 23(e), the Court must determine that the Settlement Class satisfies the requirements enumerated under Rule 23(a) and at least one of the requirements in Rule 23(b). *Molski v. Gleich*, 318 F.3d 937, 946 (9th Cir. 2003). As discussed below, the proposed Settlement Class meets all of the requirements of certification for settlement purposes.

### a.    Numerosity

There are 7,277 class members in the Manager Class and approximately 172,000 class members in the Employee Class. (Decl. of Wynne, ¶ 7.) Therefore, joinder of individual claims would be impractical and the numerosity requirement is satisfied for settlement purposes. *Lagunas v. Young Adult Inst., Inc.*, 2024 U.S. Dist. LEXIS 41242, at *7 (N.D. Cal. Mar. 8, 2024).

### b.    Commonality

Rule 23 (a) requires the presence of a single key common question that is capable of class-

wide resolution. *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013); *Wit v. United Behavioral Health*, 317 F.R.D. 106, 121 (N.D. Cal. 2016). "District courts throughout this circuit have found that commonality is met when, as here the proposed class of plaintiffs asserts that an employer adopted a policy of not reimbursing its employees' necessary business expenses in violation of Cal. [Labor] Code § 2802." *Hopkins v. Stryker Sales Corp.*, 2012 WL 1715091, *5 (N.D. Cal. May 14, 2012). Plaintiffs allege the same is true here. Whether Starbucks' failure to pay for employees' use of their personal mobile phones violates Labor Code § 2802 provides a common question that unites the class. Plaintiffs submit that the resolution of this common question turns on Starbucks' expense reimbursement records, Starbucks' common policies and procedures, testimony from Starbucks' corporate witnesses and testimony from class members.

Pursuant to Labor Code § 226.7, employers must pay meal and rest period premiums at the employee's "regular rate of compensation," which must include "all nondiscretionary payments for work performed by the employee," not just his or her base hourly pay. *Ferra v. Loews Hollywood Hotel, LLC*, 11 Cal. 5th 858, 878 (2021). Employers must also pay sick pay at the employee's regular rate. Labor Code § 246 (k). Types of pay which must be included in the regular rate are the same when calculating overtime, break premium, and sick pay. *See, Ferra* at 878; Labor Code § 246(k)(1)-(2). Among the types of pay which must be included in the regular rate are non-discretionary bonuses. DLSE Manual § 49.1.1. Defendant has admitted in discovery that for certain times during the statutory coverage of this action, it did not pay overtime, meal/rest break or sick pay premiums at the regular rate. Plaintiffs contend that whether Defendant's practice was legal, presents a common question.

### c. Typicality

A class representative's claims are typical if they are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The commonality and typicality requirements of Rule 23 (a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly

1    and adequately protected in their absence." *General Tel. Co. of Southwest v. Falcon*, 457 U.S.

2    147, 157 n.13 (1982). Plaintiffs were employed by Starbucks as Managers in California during

3    the class period and used their personal mobile phones to carry out their work for Starbucks

4    without receiving compensation. (Decl. of Wynne, ¶ 20.) Typicality is therefore satisfied.

5        **d.    Adequacy**

6        "[T]wo criteria for determining the adequacy of representation have been recognized.

7    First, the named representatives must appear able to prosecute the action vigorously through

8    qualified counsel, and second, the representatives must not have antagonistic or conflicting

9    interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582

10   F.2d 507, 512 (9th Cir. 1978). Plaintiffs have vigorously prosecuted this action by, among other

11   things, responding to discovery and sitting for deposition. Plaintiffs have no interests that are

12   antagonistic to those of the other class members because they have not brought any individual

13   non-class claims in this action. (Decl. of Wynne, ¶ 30.) Also, Plaintiffs have retained counsel who

14   are highly experienced in employment class actions. A recitation of Plaintiffs' counsel's expertise

15   is contained within Plaintiffs' Motion for Approval of Attorneys' Fees and Costs and General

16   Release Payments. (Dkt. No. 141.) The Class Meets the Requirements of Rule 23 (b)(3)

17       **i.    Personal Mobile Phone Expense Reimbursement Claim**

18       Plaintiffs contend that the requirements of Rule 23 (b)(3) are satisfied because: (1)

19   questions of law or fact common to class members predominate over any questions affecting only

20   individual members, and (2) a class action is superior to other available methods for fairly and

21   efficiently adjudicating the controversy.

22       Rule 23 (b)(3) tests whether "common questions present a significant aspect of the case

23   and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d

24   at 1022 (*quoting* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice

25   & Procedure § 1778 (2d ed. 1986)). The presence of some individualized issues, such as damages,

26   does not preclude a finding that common issues predominate. *Levya v. Medline Indus. Inc.*, 716

27   F.3d 510, 513 (9th Cir. 2013). In wage and hour cases, courts have found that predominance is

28   satisfied where, as shown here, liability will be determined based on the lawfulness of class-wide,

written policies. *Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 442 (C.D. Cal. 2014) citing *In Re Wells Fargo Home Mortg.,* 571 F.3d 953, 958–59 (9th Cir. 2009) ("uniform corporate policies will often bear heavily on questions of predominance and superiority."); *see also, Duran v. U.S. Bank Nat. Assn.*, 59 Cal. 4th 1, 30 (2014) ("an employer's uniform policy or consistent practice" supports certification).

California protects employees by providing that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties…" Labor Code § 2802 (a). Section 2802, subsection (c) defines the term "necessary expenditures or losses" as "all reasonable costs…" "'Necessity is by nature a question of fact' and that 'the reasonableness of any given expenditure must turn on its own facts.'" *Nguyen v. Wells Fargo Bank*, No. 15-CV-05239-JCS, 2016 WL 5390245, at *9 (N.D. Cal. Sept. 26, 2016) *quoting Grissom v. Vons Companies, Inc.*, 1 Cal.App.4th 52, 58 (1991). In order for an expense to be "necessary" under section 2802, it need not be mandatory. *Id.* citing *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1104 (S.D. Cal. 2006).

The elements of a claim under Labor Code § 2802 are: (i) the employee made expenditures or incurred losses; (ii) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (iii) the expenditures or losses were reasonable and necessary. *Marr v. Bank of Am.,* No. 09–cv–05978 WHA, 2011 WL 845914, at *1 (N.D. Cal. Mar. 8, 2011) citing *Gattuso v. Harte-Hanks Shoppers, Inc.,* 42 Cal.4th 554, 568 (2007). "In addition, the employer 'must either know or have reason to know that the employee has incurred [the] expense.'" *Id.* citing *Stuart v. RadioShack Corp.,* 641 F.Supp.2d 901 (N.D. Cal. 2009).

With respect to the personal mobile phone expense claim, Plaintiffs contend that Managers customarily and regularly used their mobile phones to carry out their work for Starbucks and that the use of their personal mobile phones was reasonable and necessary because they used their phones to communicate with their supervisors, corporate personnel, other managers and store personnel. Plaintiffs also contend that Starbucks knew or should have known of such use because their supervisors and corporate personnel were contacting and receiving

communications from the managers, Starbucks' corporate representatives testified that they knew managers were using their personal phones, and Starbucks' corporate policies recognize managers use their personal mobile phones. Plaintiffs also allege that Starbucks knew that its managers were not receiving reimbursement for their use of their personal mobile phones because its records show a near absence of reimbursements relative to the size of the class.

Plaintiffs submit that whether managers' use of their personal phones is reasonable and necessary and whether Starbucks knew or should have known of such use presents predominant common questions satisfying Rule 23.

### e.   *Ferra*/Sick Pay Regular Rate Claim

The common, predominating question for Plaintiffs' regular rate claims is whether Starbucks incorporated admittedly non-discretionary bonuses in the regular rate when paying break premiums and sick pay. Plaintiffs presented evidence that Starbucks did not.

District courts routinely certify regular rate claims, finding that common questions predominate, where a company has a uniform policy of not including bonuses in the regular rate and plaintiffs provide examples of the policy in practice. *See, e.g.*, *Evans v. Wal-Mart Stores, Inc.*, 2019 WL 7169791, at *6-*8 (C.D. Cal. Nov. 25, 2019) (certifying overtime regular rate claim where regular rate was automatically calculated and did not incorporate bonuses, and plaintiffs provided time record examples, notwithstanding that "analysis of each individual member's wage statement would be required" to determine violations); *Chacon v. Express Fashion Operations LLC*, 2021 WL 4595772, at *8-*10 (C.D. Cal. June 14, 2021) (certifying overtime and break premium regular rate claims where defendant admitted certain bonuses were not incorporated in the regular rate).

### CONCLUSION

The Settlement is fair and reasonable and all requirements for final approval are met. Plaintiff therefore requests the Court grant this motion and enter an Order: (1) granting Final approval of the Settlement; (2) certifying the Settlement Class; and (6) entering judgment in the case.

1  Dated: June 14, 2024                          WYNNE LAW FIRM

2

3                                                    /s/*Edward J. Wynne*
                                                 Edward J. Wynne
4                                                Attorneys for Plaintiffs

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT